COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges AtLee, Malveaux and Causey
Argued at Norfolk, Virginia


GABRIEL DARIUS INGRAM

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1960-22-1               JUDGE MARY BENNETT MALVEAUX
                                                          MAY 7, 2024
COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG
                        AND COUNTY OF JAMES CITY
                             Holly B. Smith, Judge

              Charles E. Haden for appellant.

              Lauren C. Campbell, Assistant Attorney General (Jason S. Miyares,
              Attorney General, on brief), for appellee.


       Gabriel Darius Ingram ("appellant") was convicted by a jury for rape, in violation of Code

§ 18.2-61.  On appeal, he argues that the trial court erred in denying his motion to strike the

evidence and set aside the verdict because the Commonwealth failed to prove the sexual activity at

issue was nonconsensual.  Appellant also contends that the trial court erred in denying his motion to

set aside the verdict and declare a mistrial due to alleged juror misconduct.  For the following

reasons, we affirm the trial court's judgment.

                                    I.  BACKGROUND

       On appeal, we review the evidence "in the 'light most favorable' to the Commonwealth,

the prevailing party in the trial court."  *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).  Doing so requires us to "discard the

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

On November 24, 2020, M.S.[1] allowed appellant, her ex-boyfriend, to stay overnight at her apartment after he was released from the hospital. M.S. told appellant he could sleep on a mattress in her living room because she did not want him to have to sleep in his car. At one point during the evening, appellant left M.S.'s apartment to visit an ABC store and he returned with a bottle of brandy. Appellant drank some of the brandy and about half a bottle of M.S.'s wine over the course of the evening. Also during the evening, appellant and M.S. discussed their recently concluded relationship and M.S. told appellant she did not wish to "bring[] the relationship back." At around midnight, M.S. went to sleep in her bedroom.

Sometime between 2:00 and 3:00 a.m., M.S. awoke and went to the living room to check on appellant. After speaking briefly with appellant, M.S. returned to her bedroom and began texting her current boyfriend. Appellant then entered the bedroom and "started trying to bother [M.S.] and get [her] attention." M.S. ignored appellant, but he got "in her face" and "pok[ed] at" her. Appellant leaned down, and although M.S. moved away, he began kissing M.S.'s neck and upper body. M.S. asked appellant what he was doing, but he did not respond, continued kissing her, and "start[ed] to lay down over [her]." M.S. felt "frozen" and that "there was nothing that [she] could do" as appellant began kissing her lower body.

When appellant reached toward M.S.'s pants, M.S. said "no" and told appellant to stop. Ignoring her protests, appellant removed M.S.'s pants and underwear, forced his penis into her vagina, and had sex with her. M.S., who was 4 feet, 6 inches tall and weighed 115 pounds, repeatedly told appellant, who was 5 feet, 11 inches tall and weighed between 180 and 200

---

[1] We use initials, rather than the victim's name, to protect her privacy.

pounds, "to stop, . . . [and] kept saying, no," but appellant persisted. After he ejaculated onto M.S.'s stomach, appellant asked M.S. if she "realize[d] that that was just textbook rape." Appellant then left the apartment.

Feeling "filthy," M.S. took a shower before calling her boyfriend and telling him she had been raped. M.S.'s boyfriend testified at trial and confirmed that on November 25, 2020, M.S. spoke with him and "told [him] that she had just got raped." While speaking on the phone, M.S. "started receiving text messages from [appellant] in direct response to things [she] was saying," which caused M.S. to realize that appellant "was standing in the hallway outside [her] door." M.S. called police, but reported only that appellant had "assaulted" her.

The same afternoon, appellant sent M.S. a text message stating that there were "not enough apologies in the world to justify what [he] did, or how [he] acted" and asking M.S. if she could "ever find it within [her]self to forgive" him. Appellant blamed his conduct on his drinking, which he said had "changed [him] into . . . a monster." He also asked M.S. to "protect [her]self from anyone like [him]."

Three days later, M.S. contacted police to report that appellant had sexually assaulted her. She explained at trial that previously she had reported only an assault because she was still "grappling" with what had happened to her and was not then prepared "to say something so horrifying as [rape] had happened."

Police interviewed appellant, who initially was "adamant" in denying any sexual encounter with M.S.; eventually, however, he admitted to having had vaginal intercourse with her. Appellant expressed remorse to the interviewing officer for having had sex with M.S., although he did not admit to raping her. He also acknowledged that he had sent the remorseful text message to M.S.

At the conclusion of the Commonwealth's case-in-chief, appellant moved to strike the evidence. Appellant, however, did not specify the grounds for his motion and instead stated only that he would "reserve the arguments for another day and another time."

Appellant testified in his own defense, denying he had raped M.S. and maintaining that the sex between them had been consensual, before renewing his motion to strike. He did not specify the grounds for his renewed motion, stating only that he would "renew [his] prior motion but ask the [c]ourt to take it under advisement." Appellant did not obtain a ruling on the motion.

The jury convicted appellant of rape. The trial court polled the jurors, and each juror confirmed their guilty vote. Prior to sentencing, however, one of the jurors notified the trial court clerk that she did not agree with the verdict and had felt pressured to find appellant guilty. Appellant filed a motion to set aside the verdict and declare a mistrial, contending that the verdict was not unanimous or the product of free deliberation and was instead the product of force, threat, or intimidation. Appellant filed an additional motion to set aside the verdict and dismiss the indictment, arguing that the evidence was insufficient to sustain his conviction because it failed to prove that the sexual activity between himself and M.S. had been nonconsensual.

At the hearing on appellant's motions, the trial court placed the juror at issue under oath and questioned her about the jury's deliberations.[2] She denied that any outside evidence, influences, entities, or persons had influenced the jury's deliberations or that any juror had expressed a racial or national origin bias that would cast doubt on the verdict. She also confirmed that during deliberations, she had been given the opportunity to participate and discuss anything she wanted to contribute and had been allowed to say what she thought. She denied

---

[2] The trial court questioned the juror pursuant to Virginia Rule of Evidence 2:606(b), which provides for inquiries into the validity of a jury verdict, noting that it had "literally gone down the list from Rule 2:606[]."

there had been any mistake on the jury's verdict form when it was submitted to the court. The juror nevertheless maintained that during deliberations, she had felt the other jurors were not "hearing" or understanding her and that she "couldn't explain [her]self right." With respect to evidentiary sufficiency, appellant did not raise any sufficiency argument beyond what was contained in his written motion, which simply asserted the evidence was insufficient to prove that the sexual activity had been nonconsensual.

The trial court denied appellant's motions, finding he had failed to establish that juror misconduct had rendered the jury's verdict nonunanimous[3] and the evidence was sufficient to prove that appellant had sex with M.S. against her will.

## II. ANALYSIS

### A. Sufficiency of the Evidence of Rape

Our standard of review for sufficiency challenges is well-established: "When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016)

---

[3] In the alternative, the trial court also held that under Rule 1:1 it lacked jurisdiction to consider appellant's motion to set aside the verdict alleging juror misconduct because over 21 days had elapsed since the jury had returned its verdict. However, the trial court had not entered a final order when it denied the motions. *See* Rule 1:1(a) (providing that a trial court loses jurisdiction over "final judgments, orders, and decrees . . . twenty-one days after the[ir] date of entry" and that the date of entry "is the date it is signed by the judge either on paper or by electronic means").

(quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

To obtain a conviction for rape in violation of Code § 18.2-61, "the Commonwealth must prove beyond a reasonable doubt: (1) that the defendant had sexual intercourse with the victim; (2) that it was against her will and without her consent; and (3) that it was by force, threat or intimidation." *Crawford v. Commonwealth*, 281 Va. 84, 105 (2011). "Coerced submission is not consent," *Sutton v. Commonwealth*, 228 Va. 654, 667 (1985), and the force, threat, or intimidation employed by the accused must be sufficient "to overcome the victim's will," *Breeden v. Commonwealth*, 43 Va. App. 169, 179 (2004) (quoting *Sabol v. Commonwealth*, 37 Va. App. 9, 17 (2001)).

1. Consensual Intercourse

Appellant argues that the evidence was insufficient to support his conviction for rape because it failed to prove that the sexual encounter between himself and M.S. was nonconsensual. He contends that M.S.'s testimony lacked credibility and her "failure to make an outcry or complaint [to police] within a reasonable period" undermines her account. Appellant also argues that the evidence failed to exclude his hypothesis that M.S. falsely accused him of rape because she "regretted" a consensual sexual encounter with him.

"Determining the credibility of witnesses . . . is within the exclusive province of the jury, which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (alteration in original) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). Accordingly, this Court "will not disturb the fact finder's determination of the credibility of witness testimony unless, 'as a matter of law, the

testimony is inherently incredible.'" *Id.* at 526 (quoting *Walker v. Commonwealth*, 258 Va. 54, 71 (1999)). "Evidence is not 'incredible' unless it is 'so manifestly false that reasonable men ought not to believe it' or 'shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Gerald v. Commonwealth*, 295 Va. 469, 487 (2018) (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)). In addition, it is well-established that "a conviction for rape . . . may be sustained solely upon the uncorroborated testimony of the victim." *Wilson v. Commonwealth*, 46 Va. App. 73, 87 (2005). "As we have noted, '[b]ecause sexual offenses are typically clandestine in nature, seldom involving witnesses to the offense except the perpetrator and the victim, a requirement of corroboration would result in most sex offenses going unpunished.'" *Poole v. Commonwealth*, 73 Va. App. 357, 368-69 (2021) (alteration in original) (quoting *Wilson*, 46 Va. App. at 88).

With respect to hypotheses of innocence, "[t]he Commonwealth . . . 'need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant.'" *Young v. Commonwealth*, 70 Va. App. 646, 653 (2019) (quoting *Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011)). "The reasonable-hypothesis principle . . . is 'simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt.'" *Rams v. Commonwealth*, 70 Va. App. 12, 28 (2019) (alteration in original) (quoting *Commonwealth v. Moseley*, 293 Va. 455, 464 (2017)). Accordingly, "[m]erely because [a] defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with his innocence has not been excluded." *Ray v. Commonwealth*, 74 Va. App. 291, 308 (2022) (alterations in original) (quoting *Edwards v. Commonwealth*, 68 Va. App. 284, 301 (2017)). "The fact finder 'determines which reasonable inferences should be drawn from the evidence[] and whether to reject as unreasonable the hypotheses of innocence advanced by a defendant.'" *Young*, 70 Va. App. at 654 (alteration in

original) (quoting *Moseley*, 293 Va. at 464). "Consequently, whether the evidence excludes all reasonable hypotheses of innocence is a 'question of fact,' and like any other factual finding, it is subject to 'revers[al] on appeal only if plainly wrong.'" *Id.* (alteration in original) (quoting *Thorne v. Commonwealth*, 66 Va. App. 248, 254 (2016)). Ultimately, "the question is not whether 'some evidence' supports the hypothesis, but whether a rational factfinder could have found that the incriminating evidence renders the hypothesis of innocence unreasonable." *Vasquez*, 291 Va. at 250 (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)).

Here, M.S. testified unequivocally that appellant penetrated her vagina with his penis against her will and despite her resistance and repeated protests. *See Poole*, 73 Va. App. at 368 (finding evidence sufficient to prove rape where the victim testified that "in spite of her repeated protests," the appellant "forced himself on her" and that she "struggled with [the] appellant to no avail"). She also testified that appellant admitted raping her, asking her after their encounter whether she "realize[d] that that was just textbook rape." Appellant also sent M.S. an inculpatory text just hours after the rape and after hearing some part of M.S.'s conversation about the rape with her boyfriend; in his text, he acknowledged that there were "not enough apologies in the world to justify what [he] did" to her, asked if M.S. could "ever find it within [her]self to forgive" him, described himself under the influence of alcohol as "a monster," and asked M.S. to "protect [her]self from anyone like [him]."

Although appellant asserts that M.S. did not immediately report the rape to police or otherwise "make an outcry or complaint" within a reasonable period of time, M.S. in fact told her boyfriend shortly after her encounter with appellant that she had been raped. Her boyfriend testified at trial and corroborated that M.S. had contacted him on November 25, 2020, and "told [him] that she had just got raped." Additionally, the "common law rule requiring the victim of a violent crime to raise a 'hue and cry'" has been long "discredited" in the Commonwealth. *Terry v.*

*Commonwealth*, 24 Va. App. 627, 631 (1997); *see also Woodard v. Commonwealth*, 19 Va. App. 24, 27 (1994) (noting that "the . . . rule is no longer operative"). In addition, it is well-established that a "victim's failure to immediately report [an] incident d[oes] not render his testimony inherently incredible as a matter of law." *Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991). Instead, that "circumstance is appropriately weighed as part of the entire issue of witness credibility, which is left to the jury to determine." *Juniper*, 271 Va. at 415.

Finally, the jury was not required to accept appellant's account that M.S. falsely accused him of rape after "regret[ting]" having consensual sex with him. M.S. testified that the intercourse was nonconsensual, and the jury reasonably could discount appellant's contrary claims as "little more than l[ies] to 'conceal his guilt,' and could treat such prevarications as 'affirmative evidence of guilt.'" *Coleman v. Commonwealth*, 52 Va. App. 19, 25 (2008) (first quoting *Haskins v. Commonwealth*, 44 Va. App. 1, 10 (2004); and then quoting *Wright v. West*, 505 U.S. 277, 296 (1992)).

The Commonwealth's evidence that the sex between M.S. and appellant was nonconsensual was competent, not inherently incredible, and sufficient to support a rational trier of fact's conclusion that appellant raped M.S. Accordingly, we reject appellant's first sufficiency argument.

### 2. Force, Threat, or Intimidation

Appellant also contends that the evidence was insufficient to prove his use of force, threats, or intimidation during his sexual encounter with M.S. Appellant, however, failed to preserve this argument for appeal. "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "The purpose of th[e] contemporaneous objection requirement [in Rule 5A:18] is to allow the

trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015). "Accordingly, 'this Court "will not consider an argument on appeal [that] was not presented to the trial court."'" *Clark v. Commonwealth*, 78 Va. App. 726, 767 (2023) (alteration in original) (quoting *Farnsworth v. Commonwealth*, 43 Va. App. 490, 500 (2004)). "Specificity and timeliness undergird the contemporaneous-objection rule, animate its highly practical purpose, and allow the rule to resonate with simplicity . . . . [The objection] must be both *specific* and *timely* — so that the trial judge would know the particular point being made in time to do something about it." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019) (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)).

Where, as here, a criminal defendant in a jury trial introduces evidence on his own behalf, the defendant preserves a sufficiency challenge for appeal by moving to strike at the conclusion of all the evidence or moving to set aside the verdict. *See Commonwealth v. Bass*, 292 Va. 19, 33 (2016). "Pursuant to this rule, 'a specific argument must be made to the trial court at the appropriate time, or the allegation of error will not be considered on appeal.'" *Bryant v. Commonwealth*, 70 Va. App. 697, 711 (2019) (quoting *Edwards v. Commonwealth*, 41 Va. App. 752, 760 (2003) (en banc)). Additionally, appellate courts "will not consider an argument that differs from the specific argument presented to the trial court, even if it relates to the same general issue." *Edwards*, 41 Va. App. at 761. Moreover, "[a] general argument or an abstract reference to the law is not sufficient to preserve an issue." *Id.* at 760.

Appellant's only argument challenging the sufficiency of the evidence of rape was the single sentence in one of his motions to set aside the verdict that stated, "the Commonwealth's evidence failed to prove beyond a reasonable doubt that the sexual activity at issue was nonconsensual." Appellant articulated no further arguments to the trial court challenging the

sufficiency of the evidence of rape. Accordingly, his more specific arguments on appeal that the

evidence failed to prove the required force, threat, or intimidation necessary to sustain his

conviction are not preserved.[4]

Appellant nevertheless asks this Court to review his arguments under Rule 5A:18's good

cause and ends of justice exceptions, because "artificial time constraints . . . prevented [his]

counsel from making a detailed motion to strike." "'Good cause' relates to the reason why an

objection was not stated at the time of the ruling." *Pope v. Commonwealth*, 60 Va. App. 486,

508 (2012) (quoting *Campbell v. Commonwealth*, 14 Va. App. 988, 996 (1992) (en banc)). "The

Court may only invoke the 'good cause' exception where an appellant did not have the

opportunity to object to a ruling in the trial court; however, when an appellant 'had the

opportunity to object but elected not to do so,' the exception does not apply." *Perry v.

Commonwealth*, 58 Va. App. 655, 667 (2011) (quoting *Luck v. Commonwealth*, 32 Va. App.

827, 834 (2000)).

Here, even assuming arguendo that during his motion to strike, appellant labored under

"artificial time constraints" that denied him the opportunity to make a specific argument

regarding force, threat, or intimidation at trial, nothing prevented appellant from making that

argument during the time available for him to file a motion to set aside the verdict. Indeed,

appellant had sufficient time to file two such motions, none of which articulated a specific

---

[4] At oral argument, appellant contended that his motion to set aside the verdict on the grounds that "the Commonwealth's evidence failed to prove . . . that the sexual activity . . . was nonconsensual" was adequate to preserve his sufficiency argument respecting force, threat, or intimidation. He maintained that an argument that sexual activity was, in effect, consensual is "another way of saying" that the activity was not accomplished through force, threat, or intimidation. But as noted supra, our Supreme Court has made clear that lack of consent and force, threat, or intimidation are two separate and distinct elements of rape, in violation of Code § 18.2-61. *Crawford*, 281 Va. at 105; *Commonwealth v. Minor*, 267 Va. 166, 173 (2004). These elements are not conflatable. *See Calokoh v. Commonwealth*, 76 Va. App. 717, 732 (2023) ("The lack of consent required for rape involves the victim's mental state, not the defendant's." (quoting *Gonzales v. Commonwealth*, 45 Va. App. 375, 382 (2005) (en banc))).

argument that the evidence at trial had been insufficient to prove his use of force, threat, or intimidation against his victim. And appellant makes no "good cause" argument on brief that he lacked sufficient time, after the jury returned its verdict, to prepare a motion to set aside that would adequately preserve such an argument. Accordingly, we hold that the "good cause" exception is not applicable here. *See Perry*, 58 Va. App. at 667.

Likewise, the ends of justice exception also does not apply here. "The 'ends of justice' exception to Rule 5A:18 is 'narrow and is to be used sparingly.'" *Melick v. Commonwealth*, 69 Va. App. 122, 146 (2018) (quoting *Pearce v. Commonwealth*, 53 Va. App. 113, 123 (2008)). Its application "requires proof of an error that was 'clear, substantial and material.'" *Clark*, 78 Va. App. at 768 (quoting *Brown v. Commonwealth*, 8 Va. App. 126, 132 (1989)). "The record 'must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred.'" *Id.* (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 221 (1997)). "The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant." *Holt v. Commonwealth*, 66 Va. App. 199, 210 (2016) (en banc) (quoting *Brittle v. Commonwealth*, 54 Va. App. 505, 514 (2009)). Relevant here, "to invoke the ends of justice exception when sufficiency of the evidence has been raised for the first time on appeal, an appellant must do more than show that the Commonwealth *failed* to prove an element or elements of the offense." *Redman*, 25 Va. App. at 221. "Otherwise, we would be required under the ends of justice exception to address the merits of every case where a defendant has failed to move to strike the Commonwealth's evidence as being insufficient to prove an element of the offense." *Id.* A rule of this nature "would obviate the requirement for making an adequate motion to strike or a contemporaneous objection that the evidence was insufficient." *Id.* Accordingly, to establish that a miscarriage of justice has occurred in the sufficiency context, an "appellant must

demonstrate that he or she was convicted for conduct that was not a criminal offense or the record must affirmatively prove that an element of the offense did not occur." *Id.* at 222.

Appellant's arguments that the evidence failed to prove force, threats, or intimidation against M.S. are merely attempts to demonstrate that "the Commonwealth *failed* to prove an element . . . of the offense" and are, therefore, legally insufficient to satisfy the ends of justice exception necessary to allow this Court to address a sufficiency argument raised for the first time on appeal. *Id.* at 221. Indeed, appellant identifies nothing in the record affirmatively proving that an element of the offense did not occur or that he was convicted for non-criminal conduct. Accordingly, the ends of justice exception does not apply and Rule 5A:18 bars consideration of appellant's argument.

### B. Alleged Juror Misconduct

Appellant argues that the juror's testimony established that the jury's verdict was "not the product of free deliberation" and was nonunanimous. Accordingly, he maintains that the trial court erred in denying his motion to set aside the verdict and declare a mistrial.

Whether to grant a motion for mistrial rests within the trial court's sound discretion. *Bethea v. Commonwealth*, 68 Va. App. 487, 506 (2018), *aff'd*, 297 Va. 730 (2019). "A reviewing court can conclude that 'an abuse of discretion has occurred' only in cases in which 'reasonable jurists could not differ' about the correct result." *Id.* at 506-07 (quoting *Commonwealth v. Swann*, 290 Va. 194, 197 (2015)). "'[B]y definition,' however, a trial court 'abuses its discretion when it makes an error of law.'" *Id.* at 507 (alteration in original) (quoting *Coffman v. Commonwealth*, 67 Va. App. 163, 166 (2017)). We review the trial court's legal conclusions and questions of statutory interpretation de novo. *Walker v. Commonwealth*, 74 Va. App. 475, 506 (2022).

This Court will not reverse a trial court's denial of a motion for a mistrial "unless there exists a manifest probability that the denial of a mistrial was prejudicial." *Bethea*, 68 Va. App. at 507 (quoting *Humbert v. Commonwealth*, 29 Va. App. 783, 792 (1999)). Moreover, "[w]hen possible juror misconduct is the issue on appeal, the appellant carries the burden of establishing 'a *probability of prejudice* to the accused.'" *Id.* (quoting *Jackson v. Commonwealth*, 267 Va. 178, 199 (2004)). Consistent with those principles, we have held that a mistrial was unnecessary despite a juror's claim that she voted to convict the defendant only because her fellow jurors "bullied" her during deliberations. *Id.* at 508. We emphasized that the trial court polled the jury after it returned its verdict and each juror confirmed that the verdict was correct and unanimous. *Id.* Similarly, the Supreme Court has held that evidence that a "dominant" juror had "intimidated" other jurors during deliberations did not justify a mistrial. *Caterpillar Tractor Co. v. Hulvey*, 233 Va. 77, 85 (1987). The Court noted that, although some jurors testified that they felt unduly pressured to vote in the defendant's favor and "one juror would not have agreed to the verdict but for the conduct" of the "dominant" juror, "every juror participated in a full discussion of the issues" and expressed their views while deliberating. *Id.*

Here, the record demonstrates that although the juror testified that she felt pressured by other jurors to find appellant guilty, she did not express dissent when the trial court polled the jury after it returned its verdict. To the contrary, she and her fellow jurors confirmed their guilty verdict finding. *See Bethea*, 68 Va. App. at 506. Moreover, the juror confirmed that she fully expressed her opposing views and participated in discussing the issues during deliberations. *See Caterpillar Tractor Co.*, 233 Va. at 85. The juror also denied that any extraneous evidence or influences affected the jury's verdict or that any juror had expressed a "national origin or racial bias such that the verdict should be in doubt." *See* Va. R. Evid. 2:606. The above circumstances do not establish "a *probability of prejudice*" to appellant. *Bethea*, 68 Va. App. at 507 (quoting

- 14 -

*Jackson*, 267 Va. at 199).  Accordingly, the trial court did not abuse its discretion by denying appellant's motion for a mistrial.[5]

## III.  CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*

---

[5] "When a lower court's judgment is made on alternative grounds, this Court need only determine whether any of the alternatives is sufficient to sustain the judgment." *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 574 n.9 (2018).  Accordingly, we need not address whether the trial court erroneously concluded that it could not consider appellant's post-trial motions under Rule 1:1 because the trial court's alternative ruling that appellant failed to demonstrate that juror misconduct rendered the jury's verdict nonunanimous is sufficient to sustain its judgment.  *See id.*